UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DRESHAWN AMARI JACKSON,<br><br>Defendant. | Case No. 4:19-cr-00010-JD-1<br><br>**ORDER RE MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 14 |

Defendant Dreshawn Amari Jackson is charged with a violation of 18 U.S.C. § 922(g), felon in possession of a firearm and ammunition. Dkt. No. 1. He moves to suppress the loaded pistol found under the driver's seat of a car where Jackson was sitting, and related evidence, as the fruit of an unlawful detention and search under the Fourth Amendment. Dkt. No. 14 at 2. The motion is denied.

Before reaching the merits, two procedural issues require comment. Jackson did not request an evidentiary hearing in his opening brief, and made only a cursory request for hearing in his reply brief. *See* Dkt. No. 19 at 1. The Court has resolved the motion entirely on the basis of facts that are not in dispute, and so an evidentiary hearing is not required. *United States v. Miller*, No. 4:15-cr-00197-JD-1, 2016 WL 80565, at *1 (N.D. Cal. Jan. 7, 2016). Jackson made most of his substantive arguments in his reply brief, which was considerably longer and more detailed than his opening brief. While it is, of course, the government's burden to demonstrate the legality of the detention and search, the fair and efficient administration of justice is not well served when a party reserves his main arguments for a brief the other side can't respond to in the ordinary course. For this reason, the government's motion to file a short sur-reply is granted. Dkt. No. 23.

**BACKGROUND**

The salient facts are undisputed. Shortly before 9:00 p.m. on February 21, 2018, Officer Eric Rombough of the Antioch Police Department responded to a report of possible illegal drug use in a car parked near 2305 Pearlite Court in Antioch, California. Dkt. No. 14-1; Dkt. No. 16 Exh. A. The report was made at approximately 7:22 p.m. by a resident who lived across the street. Dkt. No. 17, Exh. A.[1] The resident said that an African-American man and woman had been sitting for a couple of hours in a parked car he did not recognize, and that smoke was coming out of the car's interior. *Id.* The resident described the car as a light gray 4-door sedan. *Id.* The report was taken by the police on a recorded phone line, and the caller gave his name, address, and phone number. *Id.* Upon arrival at the scene, Officer Rombough spotted a gray 2004 Ford Taurus with an African-American man and woman inside. Dkt. No. 16 ¶ 8. He parked his patrol car in Pearlite Court, which is a cul-de-sac. *Id.* ¶ 9; Dkt. No. 19-1, Exh. A. He drove to the location without using the vehicle's siren or emergency lights. Dkt. No. 16 ¶ 9.

Officer Rombough walked up to the driver's side of the car. He states, without opposition by Jackson, that his duty weapon remained holstered and that the initial discussion with the occupants through the open driver's side window was calm, courteous, and respectful by all parties. Dkt. No. 15 at 2. Jackson was sitting in the driver's seat, and promptly and truthfully provided his name and date of birth at Officer Rombough's request. Dkt. No. 16 ¶ 10; Dkt. No. 19-2 ¶ 4. The female passenger did the same. Dkt. No. 16 ¶ 10; Dkt. No. 19-2 ¶ 4.

Officer Rombough recognized Jackson from prior contacts, and knew that Jackson had a history of possessing firearms. Dkt. No. 16 ¶ 15. He radioed dispatch for a records check on both individuals. *Id.* ¶ 11. Dispatch reported that Jackson was on parole for a California state robbery conviction. *Id.* ¶ 12. Officer Rombough understood this to mean that Jackson was subject to a search clause that authorized a search of his person, possessions, and vehicle. *Id.* ¶ 14. Jackson's written parole conditions confirmed that this was true. Dkt. No. 17, Exh. B. In response to Officer Rombough's inquiry, Jackson acknowledged that he was on parole. Dkt. No. 16 ¶ 13.

---

[1] The resident's call was filed as an audio recording without a transcript. Consequently, pin citations are not possible, but the contents of the call are not disputed.

Officer Rombough decided to do a parole search of the car. *Id.* ¶ 17. He called for a backup officer to assist him, and asked Jackson to get out of the car, after which Officer Rombough put him in handcuffs. *Id.* ¶ 16-17. Officer Rombough asked Jackson if there was anything in the car that might be of safety concern, and Jackson said that there was a loaded firearm under the driver's seat. *Id.* ¶ 17. Officer Rombough put Jackson in the back seat of the backup officer's patrol car, searched the Taurus, and found a .45 caliber pistol loaded with nine rounds where Jackson said it would be under the driver's seat. *Id.* ¶ 19. Officer Rombough radioed dispatch with a firearms check on the pistol. *Id.* ¶ 20. He then arrested Jackson for several California Penal Code violations relating to the firearm, including felon in possession of a firearm and ammunition, and carrying a loaded firearm in public, and for a parole violation. Dkt. No. 16 ¶ 21. Jackson was not charged with any drug offenses. *Id*.

Jackson says that his detention and the car search were not supported by a "particularized and objective" suspicion that Jackson was engaging in criminal activity. Dkt. No. 14 at 3. Consequently, Jackson contends that the pistol and ammunition, and any incriminating statements he made, should be suppressed. Dkt. No. 14.

## DISCUSSION

The search of the car and seizure of the loaded pistol were well within the scope of legal police procedures. "A search of a parolee that complies with the terms of a valid search condition will usually be deemed reasonable under the Fourth Amendment." *United States v. Cervantes*, 859 F.3d 1175, 1183 (9th Cir. 2017). An officer's advance notice of a search condition typically "validates a subsequent warrantless search." *Miller*, 2016 WL 80565 at *2 (citing *United States v. Caseres*, 533 F.3d 1064, 1075-76 (9th Cir. 2008)). In addition, the United States Supreme Court and the California Supreme Court have found that parole is akin to imprisonment and parolees "have severely diminished expectations of privacy by virtue of their status alone," even less than probationers. *Samson v. California*, 547 U.S. 843, 852 (2006); *see also People v. Schmitz*, 55 Cal. 4th 909, 921 (2012) (same). Suspicionless searches of parolees are lawful "so long as they are not conducted arbitrarily, capriciously or for harassment." *People v. Douglas*, 240 Cal. App. 4th 855, 861 (2015); *see also Samson,* 547 U.S. at 856-57.

3

This law seamlessly fits the operative facts here.  At the time of the encounter with Officer Rombough, Jackson was subject to a written parole condition stating that his person, residence, and any property under his control could be searched by any "peace officer, at any time of the day or night, with or without a search warrant, with or without cause." Dkt. No. 17, Exh. B.  Jackson had signed the written notice containing this search provision. *Id*.  The California Penal Code also provides that a parolee "is subject to search or seizure" at any time "with or without a search warrant or with or without cause."  Cal. Penal Code § 3067(b)(3).  There is no dispute that Officer Rombough knew Jackson was on parole before he searched the Taurus.  Jackson does not say that he was unaware of his parole search condition, and does not contend that Officer Rombough engaged in an arbitrary or harassing search.  Consequently, the search of the Taurus was reasonable and legal, and the evidence collected in the search will not be suppressed. *See United States v. Korte*, 918 F.3d. 750, 754 (9th Cir. 2019).

Jackson does not meaningfully dispute this conclusion.  He argues mainly that Officer Rombough did not have reasonable grounds for approaching the Taurus in the first place, and so the search was attendant to an illegal stop.

The point is not well taken.  "Questioning by law enforcement officers constitutes an investigatory stop only if 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'  Law enforcement officers do not implicate much less 'violate the Fourth Amendment by merely approaching an individual on the street … [or] by asking him if he is willing to answer some questions.'" *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994) (quoting *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984)); *see also Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen'")) (internal citation omitted).  An "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *Delgado,* 466 U.S. at 216.

The undisputed facts amply establish that Officer Rombough had a consensual conversation with Jackson. He approached Jackson's vehicle alone and asked for identification. Dkt. No. 14 at 1. He did not unholster or draw his weapon. Dkt. No. 16 ¶ 10. Jackson answered his questions truthfully and without objections. *Id.* Officer Rombough characterized the interaction as calm, courteous and respectful on the part of everyone involved, and Jackson does not suggest otherwise. The disagreement about the position of Officer Rombough's vehicle *vis-à-vis* the Taurus is of no moment. Even assuming that the Taurus might not have had an easy egress from the parking spot, which is not at all clear from the record, Jackson has not established that anything prevented him from simply walking away. *See United States v. Summers*, 268 F.3d 683, 687 (9th Cir. 2001) (finding that the interaction between the defendant and police officers was consensual because "[n]othing prevented him from leaving the scene on foot"). The driver of a parked car "is not clearly stopped in any sense *ab initio*, except of his own volition," and the approach of an officer on foot to ask for identification "left open the possibility of a refusal." *Kim*, 25 F.3d at 1430-31. In addition, this was not a situation where the police detained Jackson after he declined to provide his name and identification. *See United States v. Landeros*, 913 F.3d 862, 870 (9th Cir. 2019).

To be sure, the conversation evolved to the point where Jackson's freedom to leave ended. But that happened only after Jackson identified himself, and Officer Rombough ran a dispatch check to confirm that he was on parole with a suspicionless search term in place. A seizure at that point did not violate the Fourth Amendment. *See Samson*, 547 U.S. at 852. Jackson also freely and forthrightly told Officer Rombough that a loaded pistol was under the driver's seat, which reasonably indicated that Jackson may have committed a crime in light of his convicted felon status and parole restriction on any access, use, or control of a firearm. *See* Dkt. No. 17, Exh. B. "The Fourth Amendment was not designed to protect a defendant from his own candor." *People v. Avila*, 58 Cal. App. 4th 1069, 1075 (1997).

This is enough to sustain the search of the car, and deny the motion to suppress. The government's alternative argument that the phoned-in tip gave Officer Rombough reasonable suspicion for a stop and search is doubtful. Our circuit recently concluded that a tip may generate

1  reasonable suspicion under the totality of the circumstances when the tip exhibits "sufficient
2  indicia of reliability," and provides "information on potential illegal activity serious enough to
3  justify a stop." *United States v. Vandergroen*, 964 F.3d 876, 879 (9th Cir. 2020).  The tip here
4  came from a resident at the scene who provided a name, address, and phone number, and
5  communicated the resident's immediate perception of smoke emanating from the parked Taurus.
6  *See* Dkt. No. 17 Exh. A.  These factors typically support a finding of reliability.  *See, e.g.,*
7  *Vandergroen*, 964 F.3d at 879-80; *United States v. Palos-Marquez*, 591 F.3d 1272, 1277 (9th Cir.
8  2010); *United States v. Terry-Crespo*, 356 F.3d 1170, 1176 (9th Cir. 2004).

9      Whether the tip provided information on potentially illegal conduct is a different matter.
10  The tip focused on smoke coming from the Taurus.  This in itself is hardly grounds for suspicion.
11  The smoke was just as consistent with perfectly legal tobacco use as it was with anything criminal,
12  and the resident did not provide any details, such as an odor, that might have inched the presence
13  of smoke away from a plausible legal explanation.  Even so, Officer Rombough construed the tip
14  as potentially indicating drug use, although he did not say in his declaration what type of drugs he
15  thought might be involved.  *See*  Dkt. No. 16 ¶ 3.

16      Jackson says that even if marijuana were involved, which he does not concede and the
17  record does not indicate, the conduct could not have generated reasonable suspicion.  Dkt. No. 19
18  at 8-9.  That is true.  The day has passed when any possession or use of cannabis is illegal under
19  California state law.  Proposition 64, codified at California Health & Safety Code
20  Section 11362.1, legalized the possession and transportation of up to 28.5 grams of marijuana by
21  individuals 21 years or older.  *See People v. Johnson*, 50 Cal. App. 5th 620, 629 (2020).  Section
22  11362.1 expressly states that "no conduct *deemed lawful by this section* shall constitute the basis
23  for detention, search, or arrest."  *Id*. (quoting Cal. Health & Safety Code § 11362.1(c)) (emphasis
24  in original).

25      Under these provisions, California courts have concluded that even an odor of marijuana
26  coming from a parked car, and the observation of a baggie containing "a couple of grams" of
27  marijuana inside the car, did not give rise to a reasonable suspicion of criminal conduct.  *Id*. at
28  635.  This is more than enough to defeat any possibility that the tip here gave rise to a reasonable

6

suspicion of illegal cannabis use, particularly in light of the fact that Officer Rombough did not see or smell marijuana smoke, did not see any illegal drugs, and did not arrest Jackson for any drug-related offenses. The government's citation to a law banning an open container of cannabis while driving, Dkt. No. 23 at 5 (citing Cal. Veh. Code § 23222(b)), is wholly off the mark. Jackson's car was parked. *See Johnson*, 50 Cal. App. 5th at 631 (rejecting same argument for parked car). The government does not suggest that Officer Rombough, a state officer, might have had probable cause to stop and search Jackson for a violation of federal marijuana laws, and so that question need not be addressed. *See United States v. Martinez*, 811 F. App'x. 396, 398 (9th Cir. 2020) (unpublished).

## CONCLUSION

The motion to suppress is denied.

**IT IS SO ORDERED.**

Dated: October 13, 2020

JAMES DONATO
United States District Judge